IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03149-NRN

DRENDA MAY DOMINGUEZ HORTON,

Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Drenda May Dominguez Horton was not disabled for purposes of the Social Security Act. (AR[2] 21.) Ms. Dominguez has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a U.S. Magistrate Judge under 28 U.S.C. § 636(c). (Dkt. #15.)

## **Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. (Dkt. ##12, and 12–1 through 12–25.)

supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## Background

At the second step of the Commissioner's five-step sequence for making determinations,[3] the ALJ found that Ms. Dominguez "has the following severe impairments: labral tear and tendinopathy of the left hip, lumbar spondylosis, obesity, and diabetes with neuropathy." (AR 14.) Ms. Dominguez's medically determinable impairments of upper gastrointestinal hemorrhage due to acute ulcers; alcohol abuse with inactive cirrhosis of the liver with ascites; reactive airway disease; major depressive disorder; post-traumatic stress disorder

---

[3] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax*, 489 F.3d at 1084.

2

(PTSD); and alcohol dependence, in remission, were found to not be severe impairments. (*Id.*)

The ALJ then determined at step three that Ms. Dominguez "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the regulations. (AR 15–16.) Because he concluded that Ms. Dominguez did not have an impairment or combination of impairments that meets the severity of the listed impairments, the ALJ found that Ms. Dominguez has the following residual functional capacity ("RFC"):

> . . . [Ms. Dominguez] has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) meaning she can lift and carry up to ten pounds occasionally and less than ten pounds frequently; she can stand and/or walk for two hours in an eight-hour day; she can sit for six hours in an eight-hour day; she needs a cane for standing and walking; she can never climb ladders, ropes or scaffolds; she can occasionally stoop, kneel, crouch and crawl; and she can occasionally climb ramps or stairs.

(AR 16.)

The ALJ concluded that Ms. Dominguez was capable of performing past relevant work as an accounts payable coordinator. (AR 21.) Accordingly, Ms. Dominguez was deemed not to have been under a disability from February 1, 2016, through June 5, 2018, the date of the decision. (*Id.*)

## Analysis

Ms. Dominguez argues that the ALJ's decision should be reversed because his finding that Ms. Dominguez was not disabled is not supported by substantial evidence. Specifically, Ms. Dominguez contends that the ALJ failed to adequately weigh the medical evidence and opinions and did not properly

3

consider the combined effects of her impairments, including those determined to be nonsevere. Ms. Dominguez also argues that the ALJ improperly discounted her subjective complaints. Ms. Dominguez asks the Court to remand the case for an immediate payment of benefits. For the reasons set forth below, the Court will reverse and remand for further proceedings.

Ms. Dominguez argues that the ALJ's conclusion that her mental impairments were not severe is unreasonable and unsupported by the record. Ms. Dominguez challenges the ALJ's decision to give only minimal weight to the medical opinions of the two providers who specifically addressed her mental impairments: LeAnna DeAngelo, Ph.D., and Mark Suyeishi, Psy.D. (AR 20.) The Court agrees with Ms. Dominguez.

In evaluating Ms. Dominguez's mental impairments at step two, the ALJ considered whether the four areas of functioning, known as the "paragraph B" criteria, were satisfied. (AR 14.) To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of mental functioning. The four applicable areas of mental functioning are:

(1) Understand, remember, or apply information;

(2) Interact with others;

(3) Concentrate, persist, or maintain pace; and

(4) Adapt or manage oneself.[4]

---

[4] The "paragraph B" criteria apply to every mental disorder listing except for intellectual disorders (listing 112.05) and developmental disorders in infants and toddlers (listing 112.14).

The ALJ analyzed each of the four areas of mental functioning, taking into account the evidence and Ms. Dominguez's medical records. He first concluded that, with respect to understanding, remembering, or applying information, Ms. Dominguez had no limitation. (AR 14.) Although Ms. Dominguez reported memory problems, the ALJ pointed to evidence indicating she had "an intact recent and remote memory," that her intellectual ability was noted to be a strength, and she had "an appropriate fund of knowledge." (AR 14–15.) The ALJ also stated that Ms. Dominguez read her Bible daily and she expressed an interest in online school. (AR 15.)

Second, the ALJ found Ms. Dominguez had only a mild limitation in the area of interacting with others. (*Id.*) The ALJ noted that in August 2016, Ms. Dominguez "reported enjoying her neighbors." (*Id.*) She also had an "appropriate attitude" and was "at ease in interviews," and reported to caring about others and being a loving person. (*Id.*)

Third, the ALJ found Ms. Dominguez had a mild limitation vis-à-vis concentrating, persisting, or maintaining pace. (*Id.*) Ms. Dominguez was observed to be focused and attentive, and could track interviews without effort, distraction, or interruption. (*Id.*)

Finally, the ALJ found that Ms. Dominguez has no limitation in adapting or managing herself. (*Id.*) The ALJ reasoned Ms. Dominguez "lives on her own" and "has been observed to have a normal mood and affect, with normal behavior and normal though content." (*Id.*) Thus, he concluded Ms. Dominguez's determinable mental impairments did not meet the criteria of any listed impairment for mental

disorders (see 20 C.F.R. § Pt. 404, Subpart P, App. 1), either singly or in combination. (AR 14.)

These functional findings are inconsistent with the medical opinions of Dr. DeAngelo and Dr. Suyeishi, which the ALJ addressed in making his RFC determination at step four. Dr. DeAngelo is a consultative examiner who examined Ms. Dominguez on October 6, 2016, at the Commissioner's request. (AR 1031–1035.) Based on her evaluation and records review, Dr. DeAngelo determined Ms. Dominguez had no impairment in understanding; mild impairment in her ability to interact with co-workers and the public; moderate impairments in her ability to perform simple tasks and accept instruction from a supervisor; and marked impairments in her ability to remember, focus attention and concentrate, perform complex tasks, and complete an average workday without interruption from psychological conditions. (AR 1034.) According to cognitive screening, Ms. Dominguez's immediate memory was normal, but her delayed memory was mildly impaired. There was marked impairment in her concentration, and moderate impairments in her abstractions, judgment, and reasoning. (AR 1035.)

About one month later, Dr. Suyeishi, a state agency nonexamining medical consultant, reviewed Ms. Dominguez's records and issued a Disability Determination Explanation. (AR 276–91.) Dr. Suyeishi found Ms. Dominguez had mild restriction in her activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, and had one or two episodes of decompensation. (AR 282.) Dr. DeAngelo concluded that

Ms. Dominguez had moderate limitations in her ability to: (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods (3) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; and (4) interact appropriately with the general public. (AR 286–88.) In his Mental RFC ("MRFC"), Dr. Suyeishi opined that Ms. Dominguez could perform work "not involving significant complexity or judgment which can be learned in up to three months' time on the job." (AR 288.) He further stated she should have limited interaction with the general public but could accept supervision and interact with coworkers, and she could adapt to work-related situations "as long as work demands are within MRFC limitations." (*Id.*)

Dr. Suyeishi disagreed somewhat with Dr. DeAngelo's findings, stating that her opinion "is an overestimate of the severity of the individual's restrictions/limitations." (AR 288.) Specifically, he states Dr. DeAngelo's exam "shows some mild to moderate depression [symptoms]" but that Ms. Dominguez is "able to attend meetings and church" and also "[a]ble to do household chores." (AR 284.)

In determining that Ms. Dominguez had, at most, mild impairments in mental functioning, the ALJ gave these two opinions minimal weight. As to Dr. DeAngelo, the ALJ noted that she only examined Ms. Dominguez once. (AR 20.) He also found that Dr. DeAngelo's opinion was not consistent with her own examination, which showed only mild memory impairment, or the medical record,

which "indicates the claimant reads the Bible daily, uses the bus for transportation, and lives on her own." (*Id.*) The ALJ also points out that Ms. Dominguez "reportedly enjoyed spending time with her neighbors, and considers herself a caring individual," which purportedly is "not consistent with the moderate to marked limitations assigned by Dr. DeAngelo." (*Id.*)

The ALJ similarly discounted Dr. Suyeishi's opinion; first, because he did not examine Ms. Dominguez, and second, because his opinion is not supported by the medical record. (*Id.*) Here, the ALJ again notes that Ms. Dominguez's activities of reading her Bible, using the bus, and living on her own are inconsistent with the moderate limitations assigned by Dr. Suyeishi's opinion.

The Court finds the ALJ's analysis deficient. The Tenth Circuit has indicated that case law prescribes a very limited role for step two analysis." *Lee v. Barnhart*, 117 F. App'x 674, 676–77 (10th Cir. 2004). "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis." *Id.* The ALJ's finding that Ms. Dominguez's major depressive disorder and PTSD were "nonsevere" impairments is unreasonable given the ALJ's treatment of the medical opinion evidence in the record.

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). "The opinion of an

examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(1), (2); 20 C.F.R. § 416.927(1), (2); SSR 96–6p, 1996 WL 374180, at *2). No matter the relationship, the ALJ must "give consideration to all the medical opinions in the record" and "discuss the weight he assigns to them." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted).

The ALJ must consider the following factors when evaluating all medical opinions:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin,* 813 F.3d 1326, 1331–32 (10th Cir. 2016). Neither the regulations nor the Court require a factor-by-factor recitation, but the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the source opinion and the reasons for that weight. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted).

Here, the ALJ's treatment of the medical opinions was flawed for several reasons. First, although the length of the treatment relationship and frequency of examination is relevant in evaluating medical opinions, the ALJ's observations that Dr. DeAngelo examined Ms. Dominguez once, and Dr. Suyeishi was only a

consulting physician, were not valid reasons, by themselves, for discounting those opinions. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (ALJ's finding a physician's opinion is not entitled to the conclusive weight of a treating medical-source opinion "is not by itself a basis for rejecting [the opinion]—otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings"). This is particularly true because there were no other medical opinions to which the ALJ gave greater weight or otherwise supported the ALJ's mental impairment evaluation. Thus, it is curious, at best, to discredit Dr. DeAngelo and Dr. Suyeishi's opinions due to a lack of longitudinal treatment relationship when they were the only doctors to actually offer an opinion as to Ms. Dominguez's mental limitations. *See Davis v. Astrue*, No. 09-cv-00881-REB, 2010 WL 3835828, at *4 (D. Colo. Sept. 23, 2010). Indeed, "this reason is not reason at all." *Gonzales v. Colvin*, 69 F. Supp. 3d 1163, 1169 (D. Colo. 2014). d

Second, the ALJ erred in relying on Ms. Dominguez's daily activities to support his conclusion that the doctors' findings were inconsistent with the record, primarily because he engaged in improper picking and choosing. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence

he rejects."); *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001). As noted by Ms. Dominguez, the ALJ largely ignored voluminous medical records indicating she suffered from severe and recurrent major depressive disorder and chronic PTSD. (AR 836–949.) Although her symptoms fluctuated (*see id.*, AR 1165–1550), Ms. Dominguez expressed feelings of intense depression and anxiety and significant suicidal ideation, as well as "difficulty concentrating from past trauma" (AR 839), and treatment notes indicate that "she frequently mixes up thoughts and facts." (AR 1543.) Records also show Ms. Dominguez had "some word-finding problems" and "some thought-blocking," along with complaints of memory problems. (AR 1432, 1444.) This evidence provides support for Dr. DeAngelo and Dr. Suyeishi's impairment findings. At the very least, the ALJ was required to discuss these records, and reconcile them with his findings that Ms. Dominguez's "intellectual ability was noted to be strength," "she was observed to have an appropriate fund of knowledge," "she expressed interest in online school," and "she has been observed to be focused." (AR 14–15.) He failed to do so, relying instead only on the portions of the record that ostensibly reinforced his conclusion. *See Gonzalez*, 69 F. Supp. 3d at 1173 (An "ALJ's failure to acknowledge the cyclical pattern of plaintiff's symptoms suggests some level of 'cherry picking' the record, which is improper.").

The ALJ also relied on Ms. Dominguez's relatively banal activities of daily living in determining that her mental impairments were not severe, in disregarding her subjective complaints, and in formulating his RFC. He summarized Ms. Dominguez's testimony regarding her depression as follows:

> At the hearing, the claimant testified that she struggles with depression on a daily basis. She has severe bouts of depression that can last for two months. She has these three or four times per year. She sees a therapist twice a week. She testified she cannot get out of bed when her depression in severe. She cannot focus well enough to read. She is having nightmares five out of seven nights. She has not drank constantly since 2015. She testified that she will have to reread things. She testified that she is forgetful, and her daughter helps her with bills. . . . She testified she takes a high dose of antidepressants, and she takes sleeping medication. She has difficulty waking after taking her sleeping medicine. She testified that she will feel like she accomplished something if she goes to check the mail. Her daughter helps with her hair. When she has a severe bout of depression she will not want to get out of bed or eat. Her brother will transport her. She will cook in the microwave. She may go two weeks without showering. She testified stress causes pain. . . . She will have panic attacks from anxiety and stress. Everything is stressful. She testified that she does not think she could do a job full time, even if it was physically easy. She is not good with numbers anymore. She testified she cannot concentrate. . . .

(AR 17–18.)

The ALJ then found that Ms. Dominguez's medically determinable impairments could reasonably be expected to cause some of the symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 18.) Although "credibility determinations are peculiarly the province of the finder of fact and should not be upset if supported by substantial evidence" *Kepler v. Chater*, 68 F.3d 387, 390–91 (10th Cir. 1995), the ALJ must expressly link his credibility assessment to specific evidence in the record. *Id.* at 910. *See also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

From the ALJ's opinion, it looks like he gave great weight to Ms. Dominguez's statements about things she could do despite her limitations while

12

giving no weight to her statements about the limiting effects of her impairments. This type of analysis is an "unfair characterization of the record." *Kaighn v. Colvin*, 13 F. Supp. 3d 1161, 1174 (D. Colo. 2014). The ALJ did not specifically address how activities like reading the Bible, taking the bus, enjoying company, or being a caring individual support his conclusion that Ms. Dominguez's mental limitations would not prevent her from attending work on a regular basis necessary to keep a job. *See Morgan v. Colvin,* 68 F. Supp. 3d 1351, 1357 (D. Colo. 2014) ("activities of daily living rarely translate well into a determination of what a claimant can do on a sustained basis in the workplace"); *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("In order to engage in gainful activity, a person must be capable of performing on a reasonably regular basis."). He also failed to address the fact that Ms. Dominguez's testimony is consistent with Dr. DeAngelo's and, to a lesser degree, Dr. Suyeishi's, opinions.

In viewing the record as a whole, it is difficult to determine how the ALJ did anything other than substitute his judgment for that of Drs. DeAngelo and Suyeishi. He was not entitled to do so. *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) (an ALJ cannot interpose his own "medical expertise" over that of a physician); *Miranda v. Barnhart*, 205 F. App'x. 638, 641 (10th Cir. 2005) ("The ALJ's approach impermissibly put him in the position of judging a medical professional on the assessment of medical data."). In any event, the reasons he gave for discrediting these opinions are either not legitimate or not borne out by

the record, and therefore his conclusions at step two and his RFC findings do not constitute substantial evidence.[5]

Finally, the ALJ's errors cannot be considered harmless, as the Court cannot conclude that no reasonable factfinder could have reached a different conclusion had the weight of the medical opinion evidence been adequately explained and supported by substantial evidence. *See Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004)*.* (concluding that, with certain "caveats, it . . . may be appropriate [in Social Security appeals] to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). Conversely, and for the same reason, the Court does not find that this case presents an appropriate occasion to exercise the Court's discretion to direct an award of benefits in Ms. Dominguez's favor. *Davis v. Astrue*, No. 09-cv-00881-REB, 2010 WL 3835828, at *6 (D. Colo. Sept. 23, 2010). Accordingly, the case must be remanded for further proceedings.

---

[5] Moreover, even if the ALJ's finding that Ms. Dominguez's mental impairments were nonsevere was supported by substantial evidence, he was still required to evaluate the combined effect of both her severe and nonsevere impairments at step three of the five-step sequential process for reviewing disability claims. *See, e.g.,* 20 C.F.R. §§ 404.1521, 404.1545(a)(2). The ALJ's step three analysis did not specifically address any listing for mental disorders, only those for physical impairments. This is also reversible error. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("the failure to consider all of the impairments is reversible error.").

## **Conclusion**

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion.

Dated this 19th day of August, 2019.

BY THE COURT:

_N. Reid Neureiter_
N. Reid Neureiter
United States Magistrate Judge